UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| VANESSA HILL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-2685 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 5, 7, 14 |
| | : | | |
| XTREME SOLUTIONS, INC., | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION TO</small> D<small>ISMISS</small>

**I.  INTRODUCTION**

Plaintiff Vanessa Hill worked for Defendant Xtreme Solutions, Inc. ("XSI") from May to October 2022.  In September 2022, Hill requested medical leave until January 2023.  XSI instead terminated her employment, citing chronic absences and tardiness.  Hill then filed this lawsuit, claiming that the dismissal violated the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and her contract of employment.  XSI moves to dismiss Hill's Complaint, and the Court grants that motion.

**II.  FACTUAL BACKGROUND**

Because Hill is proceeding *pro se* and the Complaint itself contains few factual allegations, the Court draws these facts "from the complaint and from additional materials submitted by" Hill.  *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 677 (D.C. Cir. 2009); *see also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (noting that the D.C. Circuit has "permitted courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged"); *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts

alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

Plaintiff Vanessa Hill began working for Defendant XSI on May 31, 2022, *see* Offer Letter, Ex. 1 to Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 10-1, where she supported the company's contract at the D.C. Passport Office, *see* Compl., Ex. 1 to Notice of Removal at 2, ECF No. 1-1. Her signed offer letter states that her "employment with XSI constitutes employment-at-will for an unspecified duration and may be terminated at any time by either [her], XSI and/or [the] Client." Offer Letter at 3. On a post-job-offer medical questionnaire, Hill stated that she did not have any disabilities that "might affect [her] attendance at work or ability to do this job[.]" Ex. 2 to Pl.'s Mot. Expedite at 4–6, ECF No. 14-1.

Hill attaches the company's employee handbook, which states that FMLA leave may be available "[w]hen the employee is unable to work because of a serious health condition," but that the employee must meet "certain eligibility factors," including having "worked at Xtreme Solutions at least 12 months prior to the date leave commences or is requested to commence." Ex. 5 to Pl.'s Opp'n at 9, ECF No. 10-1. The handbook additionally lays out the requirements for non-FMLA leave, stating that "[t]he decision to grant such an unpaid leave of absence is within the sole discretion of the Company." *Id.*

Hill contends that various incidents occurred from May to September 2022, including an accusation that she stole a check, after which the company moved her "upstairs." Pl.'s Opp'n at 3. There were also issues with "[f]iles being stolen or misplaced and resurfacing," and she asserts that the company "accused" her of violating the company's dress code. *Id.* at 2–3. She additionally attaches an email dated August 30, 2022, stating that "[m]y attendance has not been up to par, which I'm in agreement with." Hill Email, Ex. 2 to Pl.'s Sur-reply at 2, ECF No. 12-1.

Hill added "it [is] a possibility I'm not a good fit" for the role. *Id.* She also claimed issues with the company's communications reaching her email account. *Id.* Hill nonetheless asserts that the month of September was her "best ever," and that her supervisor praised her performance. Pl.'s Opp'n at 3.

On September 28, 2022, Hill's counselor signed a letter stating that he had seen her "starting on September 16th due to stress related to work." Ex. 1 to Pl.'s Mot. Expedite at 1, ECF No. 14-1. The letter continued, "Ms. Hill is experiencing significant stress and anxiety related to a toxic work environment. Please let this letter serve as notice to allow her to have excused sick leave from work September 14th, 15th and 16th 2022." *Id.* An attached "Short Term Disability Claim Form" stated that the counselor had advised Hill not to return to work, with an "[e]xpected return to work date" of January 15, 2023. *Id.* at 2. Hill asserts that these "emails and documentation were sent" to XSI "in a timely manner." Mot. Expedite at 1.

On October 4, 2022, XSI terminated Hill. Termination Letter, Ex. 1 to Pl.'s Sur-reply, ECF No. 12-1. XSI explained that it fired her because she was "[o]ut of office 22 days of the last 60 days and arrived late/left early 27 days out of the last 60 days with a total of 200+ hours of missed eligible work, which has interfered with the department's operation." *Id.* The termination letter additionally cited XSI's "immediate contractual need for the position to be filled" and Hill's "[u]nsatisfactory performance due to excessive time away." *Id.* Hill attaches a "Notice of Scheduled Interview" with the Equal Employment Opportunity Commission for February 6, 2023, but she provides no further information on her interactions with that agency. Ex. 6 to Pl.'s Opp'n, ECF No. 10-1.

On June 14, 2023, Hill filed her Complaint in the Superior Court of the District of Columbia. Compl. at 1–2, ECF No. 1-1. Hill asserted that XSI "denied [her] the ADA and

FMLA act" because she was "[t]erminated while under physician care" and "denied [return to work] on Jan 2023." *Id.* She additionally claims that she was "[d]enied NONFMLA with physician statement" and fired based on "attendance and performance" as a pretext to "deny NONFMLA and [return to work] date." *Id.* She asks the Court to "[g]rant [return to work] with back pay and medical bills paid," or a "payout" for a "5 [year] contractual agreement." *Id.*

XSI removed the case to this Court on September 14, 2023, after the company was served. Notice of Removal, ECF No. 1. XSI then moved to dismiss the case. ECF No. 7. Hill opposed the motion, ECF No. 10, and the parties replied and sur-replied, ECF Nos. 11, 12. Hill has additionally filed a Motion for Hearing, ECF No. 5, as well as a Motion to Expedite, ECF No. 14.

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

Finally, because Hill is proceeding *pro se*, the Court will construe the Complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, the Court may "examine other pleadings to understand the nature and basis of [the plaintiff's] *pro se* claims" as alleged in her complaint. *Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2002)). Nevertheless, even a *pro se* plaintiff is not excused from adhering to the applicable procedural rules and must "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton*, 567 F.3d at 681–82 (quoting *Iqbal*, 556 U.S. at 679). Therefore, despite the liberality afforded *pro se* complaints, the Court "need not accept inferences unsupported by the facts alleged in the complaint or 'legal conclusions cast in the form of factual allegations.'" *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

## IV.  ANALYSIS

The Court first briefly reviews its jurisdiction over this matter before considering whether Hill has stated a claim under any relevant theory.  The Court construes the Complaint to raise claims under the FMLA, the ADA, and D.C. common law regulating contracts.

### 1.  Jurisdiction

Federal courts have an "independent obligation to ensure that they do not exceed the scope of their jurisdiction."  *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).  XSI removed the case to this Court on the basis of diversity jurisdiction, which is governed by 28 U.S.C. § 1332.  Xtreme Solutions is a Georgia corporation with its principal place of business in Georgia.  Notice of Removal at 2; Compl. at 1–2.  Vanessa Hill is a citizen of Washington, D.C., and claims up to $212,376 in damages.  Notice of Removal at 2; Compl. at 1.  Because the parties are "citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000," the Court finds that it has diversity jurisdiction over this dispute under § 1332.  28 U.S.C. § 1332.

### 2.  FMLA Claim

Hill claims that XSI "denied" her "FMLA/NONFMLA" leave.  Compl. at 1.  XSI asserts that she was not eligible for FMLA leave and that she fails to state a claim for FMLA interference or retaliation.  Def.'s Mot. Dismiss at 9–15.  The Court agrees that Hill fails to state a claim under the FMLA.

The Court construes Hill's Complaint liberally to claim both interference with rights under the FMLA and retaliation for exercising protected FMLA activity.  Under the FMLA, an "eligible employee" is entitled to "a total of 12 workweeks of leave during any 12-month period for," among other reasons, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(a)(1).  The law

6

defines "eligible employee" as "an employee who has been employed (i) for at least 12 months by the employer . . . and (ii) for at least 1,250 hours of service with such employer." *Id.* § 2611(2)(A). To prevail on an FMLA-interference claim, Hill must prove, among other things, that "she was eligible for the FMLA's protections." *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d 207, 217 (D.D.C. 2016). To state a case of FMLA retaliation, a plaintiff must show "the exercise of protected FMLA activity." *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1375 (D.C. Cir. 2020); *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161 (D.C. Cir. 2015).

The facts contained in the Complaint and documents attached to Hill's subsequent filings show that she was not an "eligible employee" at the time she sought leave or at the time she was dismissed. Hill began working for XSI in May 2022.[1] *See* Offer Letter. This means that she would not become eligible for FMLA leave until May 2023 at the earliest, after "at least 12 months" of employment at XSI. 29 U.S.C. § 2611(2)(A). Yet the relevant events here occurred in September 2022 when she sought leave, *see* Ex. 1 to Pl.'s Mot. Expedite, and October 2022, when XSI terminated her, *see* Ex. 1 to Pl.'s Sur-reply. Plaintiff thus cannot show that she was an "eligible employee" under the terms of the FMLA and does not state a claim for relief under the statute.[2] *See Hill v. Walker*, 737 F.3d 1209, 1215 (8th Cir. 2013) (holding that a plaintiff employed "fewer than twelve months . . . had no FMLA rights when she was terminated"). Hill

---

[1] Hill asserts in her opposition that XSI actually hired her in March 2022, when the company initiated her background check. Pl.'s Opp'n Mot. Dismiss at 2. The difference between May 2022 and March 2022 would not affect the Court's reasoning or conclusions.

[2] Hill cannot state a claim under District of Columbia law for the same reason. *See* D.C. Code § 32-501(1)(A)(i) (limiting coverage to individuals "employed by the same employer for at least 12 consecutive or non-consecutive months . . . in the 7 years immediately preceding the date on which the period of family or medical leave is to commence"). Hill's filings contain no indication that she worked for XSI for any period prior to May 2022.

additionally asserts that XSI denied her "NONFMLA" leave, Compl. at 1, which the Court construes as a breach of contract claim and addresses below.

Because Hill was not an eligible employee under the FMLA, she cannot sustain an FMLA retaliation claim, either. "[C]ourts have generally recognized that, aside from very limited circumstances, eligibility under the FMLA is a prerequisite to make an FMLA retaliation claim." *Dougherty v. Cable News Network*, 396 F. Supp. 3d 84, 112 (D.D.C. 2019); *see also Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) ("This Court finds that the FMLA's 'eligible employee' requirement applies in all FMLA cases, including retaliation cases."); *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (rejecting retaliation claim because "[t]here can be no doubt that the request—made by an ineligible employee for leave that would begin when she would still have been ineligible—is not protected by the FMLA."). The limited exceptions include employees who announce an intent to take FMLA leave in the future once they become eligible under the statute. *See Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1276 (11th Cir. 2012). Here, however, Hill would not have become eligible for FMLA leave during the approximately four months she requested, meaning she does not fit into this exception. Hill thus cannot sustain a claim under the FMLA.

3.  ADA Claim

Hill refers to the ADA in passing in her Complaint, so the Court will address whether the facts she alleges state a claim under that statute, as well. *See* Compl. at 1. XSI construes Hill's claim as a failure-to-accommodate claim and argues that she does not allege facts showing that she had a disability, that XSI knew of any disability, that she requested accommodations from XSI that were refused, or that she could perform the essential functions of her position with a

reasonable accommodation. Def.'s Reply at 3–5, ECF No. 11. The Court agrees that Hill's complaint fails to state a claim under the ADA.

Under the ADA, a covered employer is required to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (citation omitted). To state a claim for failure to accommodate, the plaintiff must demonstrate that "(1) he was a qualified individual with a disability; (2) his employer had notice of his disability; and (3) his employer denied his request for a reasonable accommodation." *Badwal v. Bd. of Trs. of Univ. of D.C.*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). "An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999).[3] To succeed on a retaliation claim, a plaintiff needs to show "that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal link between the former and the latter." *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015).

The Court concludes that Hill does not state a failure-to-accommodate claim or a retaliation claim under the ADA because the facts alleged indicate that she requested FMLA leave—a nearly 16-week leave of absence—and not an accommodation to continue working. In *Waggel*, the D.C. Circuit held that there is no direct "equivalency" between "requests for FMLA leave" and "requests for an ADA accommodation." 957 F.3d at 1373. There, the plaintiff "never expressly requested an ADA accommodation." *Id.* at 1371. The court concluded that the

---

[3] D.C. Human Rights Act disability discrimination claims are analyzed under the same framework as those under the ADA. *Dougherty*, 396 F. Supp. 3d at 101. Failure to state a claim under the ADA would thus foreclose a claim under D.C. law, as well.

plaintiff "chose to seek leave under the FMLA rather than request accommodation under the ADA" through the defendant employer's "established channels," precluding her ADA claim. *Id.* at 1373. Instead of requesting a reasonable accommodation to continue working, "[b]y invoking FMLA, [Hill] was asking *not* to work for some period of time." *LaRochelle v. Lynott*, No. 22-cv-0115, 2023 WL 6215365, at *7 (D.D.C. Sept. 25, 2023); *see also Badwal*, 139 F. Supp. 3d at 314 ("A request to be absent from work for a period of time, even if this request is for medical reasons, does not equal a request for a reasonable accommodation."). Hill includes no facts here indicating that she requested a disability accommodation in addition to medical leave, and she therefore does not state a claim under the ADA.

Hill additionally does not plead facts indicating that she is a "qualified individual" as the ADA requires. The statute defines "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). Recalling that her leave request arose from "significant stress and anxiety related to a toxic work environment," Ex. 1 to Pl.'s Mot. Expedite at 1, Hill does not explain how the four months of leave would have rendered it more likely that she could perform the essential functions of her job at XSI. The attachments to her filings indicate that she had not attended work regularly within the two months before she was terminated. *See* Termination Letter (stating that Hill had missed 22 of the previous 60 days and had arrived late or left early 27 out of the previous 60 days). Although Hill asserts that her "[a]ttendance became the 'Narrative'" for her dismissal, Pl.'s Opp'n Mot. Dismiss at 3, she contradicts this in an email attached to her sur-reply, in which she admits that her "attendance has not been up to par" and that "it [is] a possibility I'm not a good fit." Hill Email, Ex. 2 to Pl.'s Sur-reply. Furthermore, by seeking FMLA leave, Hill in effect asserted that she was "unable to perform the functions of [her]

position." 29 U.S.C. § 2612(a)(1)(D); *see also* Ex. 5 to Pl.'s Opp'n at 9 (explaining, in the employee handbook, that the leave was available for an employee who is "unable to work because of a serious health condition"). The D.C. Circuit has additionally explained that "coming to work regularly"—at least in the context of roles that must be performed on site—is an "essential function" of employment. *Carr v. Reno*, 23 F.3d 525, 529 (D.C. Cir. 1994); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."). The Court thus concludes that the facts alleged in Hill's filings do not establish that she was a qualified individual under the ADA.

In sum, Hill fails to state a claim under the ADA because the alleged facts indicate that she sought FMLA leave rather than an accommodation and do not establish that she was a qualified individual. Her ADA claim must therefore be dismissed.

### 4. Breach-of-Contract Claim

The Court finally addresses Hill's breach-of-contract claims. Hill asserts that XSI breached a five-year contractual agreement by terminating her in violation of the company's "employee handbook guidelines" and therefore owes her $212,376. Compl. at 1. The Court additionally construes Hill's reference to "NONFMLA" leave to constitute a contract claim arising out of the employee handbook. *Id.* XSI contends that Hill's offer letter and the employee handbook she attaches to her filings demonstrate that she lacked an employment contract. Def.'s Reply at 12. The company additionally argues that the employee handbook did not create an implied contract under which Hill was entitled to non-FMLA leave. *Id.* at 9–11. The Court again agrees with XSI.

To prevail on a breach-of-contract claim under D.C. law, a plaintiff must prove (1) a valid contract between the parties, (2) an obligation or duty arising from that contract, (3) a breach of that obligation or duty, and (4) damages caused by that breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). A disclaimer in an employer's personnel or policy manual can serve to negate any implied contractual rights arising from the document. *See Futrell v. Dep't of Lab. Fed. Credit Union*, 816 A.2d 793, 806 (D.C. 2003); *Grove v. Loomis Sayles & Co., L.P.*, 810 F. Supp. 2d 146, 149 (D.D.C. 2011). In addition, "[i]t has long been settled in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Alibalogun v. First Coast Sec. Sols., Inc.*, 67 F. Supp. 3d 211, 216 (D.D.C. 2014) (quoting *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991)). "[A] plaintiff bears the burden of alleging facts sufficient to show that 'the parties intended that termination be subject to specific preconditions.'" *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 70 (D.D.C. 2005) (quoting *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 91 (D.D.C. 2004)).

First, it is apparent that XSI's employee handbook does not create a contractual relationship between Hill and the company. The District of Columbia Court of Appeals has explained that an employee handbook does not create an implied contract when it both states that it "is not a contract" and "contain[s] language clearly reserving the employer's right to terminate at will." *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 505 (D.C. 2002) (quoting *Sisco v. GSA Nat'l Capital Fed. Credit Union*, 689 A.2d 52, 55 (D.C. 1997)); *see also Phillips v. Spencer*, 390 F. Supp. 3d 136, 168 (D.D.C. 2019). Here, the employee handbook says that it "is not intended to create, nor is it to be construed as to or constitute a contract between Xtreme Solutions and any or all of its employees." Ex. 4 to Pl.'s Opp'n at 8. The handbook additionally states that

12

"[e]mployment at the Company is employment at-will and may be terminated at the will of either the Company or the employee." *Id.* The handbook thus contains both requirements articulated in *Boulton* and does not create any enforceable contract under District of Columbia law.

Hill may assert that a five-year contract arose from the agreement to initiate the security clearance process. In her opposition, she states that a "contract and obligation were signed" and that she "went through the vigorous process of a background in-depth investigation for a Secret Clearance." Pl.'s Opp'n Def.'s Mot. Dismiss at 2. She attaches a copy of the instructions for the SF-85, which is a questionnaire for public trust positions. Ex. 2 to Pl.'s Opp'n Def.'s Mot. Dismiss, ECF No. 10-1. The Court surmises that Hill has confused the length of time a public trust clearance remains valid with the length of time XSI had promised to employ her. Yet neither the SF-85, nor the State Department's decision to grant Hill a clearance, can be reasonably construed as creating an employment contract with XSI. The Court finds no other facts alleged in the Complaint, subsequent filings, or any of the attached documents demonstrating that the parties had agreed to an employment contract in another form.

Hill does not state a claim for relief based on denial of non-FMLA leave. The claim by definition cannot be based on violation of the FMLA. As discussed above, the parties do not have a separate contract guaranteeing Hill non-FMLA leave as a condition of employment. Even if the employee handbook did create an implied contract, the document provides that the decision whether to provide non-FMLA leaves of absence lies "within the sole discretion of the Company." Ex. 4 to Pl.'s Opp'n at 9. XSI thus would not breach an agreement by denying Hill non-FMLA leave.

Finally, Hill does not state a breach-of-contract claim arising from her dismissal. In addition to the disclaimer language in the handbook, Hill attaches a signed offer letter stating that

her "employment with XSI constitutes employment-at-will for an unspecified duration and may be terminated at any time." Offer Letter at 3. The facts alleged indicate that Hill was an at-will employee who—as far as contract law is concerned—"can be terminated from employment for any reason or no reason at all, with or without cause or justification." *Morris v. Carter Glob. Lee, Inc.*, 997 F. Supp. 2d 27, 44 (D.D.C. 2013) (citing *Adams*, 597 A.2d at 30). The only exception to this rule arises when the sole reason for discharge is the employee's refusal to violate the law, *see Byrd v. VOCA Corp. of Washington, D.C.*, 962 A.2d 927, 932 (D.C. 2008), a claim that would not be supported by the facts here. As a result, Hill's breach-of-contract claim must be dismissed as well.

## B. Conclusion

For the foregoing reasons, XSI's motion to dismiss is **GRANTED**; and it is

**FURTHER ORDERED** that Hill's motion for a hearing is **DENIED AS MOOT**; and it is

**FURTHER ORDERED** that Hill's motion to expedite is **DENIED AS MOOT**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 6, 2024                                                    RUDOLPH CONTRERAS
                                                                                                  United States District Judge